## MARY FLEMING

*v.*

## JOHN McHALE *et al.*

1. RESULTING TRUSTS—*where vendee makes first payment, but the deed is made to another.* Where a vendee of lands makes the first payment according to the terms of the purchase, and is ready to give notes and a mortgage on the premises for the deferred payments, but the vendor, to avoid a question of minority of the vendee, makes the deed to the mother of the latter, and takes her notes and mortgage, with the understanding between the parties to the transaction, that the son is to pay them, and the son pays the annual interest on the notes, and improves the land, and pays the notes when due, though subsequent to the death of the grantee named in the deed, a trust results in favor of such actual vendee, and equity will decree the conveyance of the legal title of the heirs of the grantee to him.

2. SAME—*minor's earnings invested in lands.* And where it appears that the money advanced upon the first payment was, in fact, the earnings of a minor, but that the parent entitled, though the grantee, in the deed, never claimed such earnings, the trust will not be defeated.

3. SAME—*aliquot payments.* Where the first payment is in full satisfaction of one instalment under the contract of purchase, and the vendor is ready to make the deed to the person entitled, the rule, in relation to *aliquot* payments, is sufficiently complied with, whether the portion paid is an exact divisor of the whole purchase price or not.

4. COSTS—*against minor heirs.* In a suit by the party, in such a case, in whose favor the trust is declared, against the minor heirs of the person to whom the legal title had been conveyed, costs should not be decreed against the latter.

APPEAL from the Circuit Court of Jersey county; the Hon. D. M. WOODSON, Judge, presiding.

James McHale and John McHale filed a bill in chancery against Mary Fleming, and other co-heirs with themselves, of Mary McHale, deceased, charging that a certain tract of land, the legal title of which was in Mary McHale at her decease, was purchased by them with their money, and that the deed

was, in fact, made to said Mary McHale, because Hurd, the vendor of the land, believed the complainants were under age, and was unwilling to 'take their notes and mortgage for the deferred payments; that it was understood by all the parties that the purchase was really made by James and John, and that they were to pay the annual interest on the notes, and the notes themselves when due, and that they have paid the interest annually, been in possession of the premises, and made valuable improvements; pray that the legal title be conveyed to them under the decree of the court.

But one of the defendants answer, and that is Mary Fleming, a minor. In her answer she denies that James and John McHale purchased the premises mentioned, for themselves, but that if they purchased at all, they purchased for their mother, Mary McHale, the grandmother of respondent, with her money, or money earned by her several children, to which she was lawfully entitled; admits the making the deed to Mary McHale, and that she knows nothing of the alleged payments of interest, but says that if done, it was without the authority or knowledge of said Mary McHale. Denies that Mary McHale had no interest in said premises, and that the same were conveyed to her merely to enable Hurd to obtain security; denies that Mary McHale never intended to pay said notes, but, on the contrary, alleges that if she had lived she would have done so; knows nothing of valuable improvements, but says if any such were made they were made for Mary McHale.

At a subsequent term, owing to the death of James McHale, a bill of revivor was filed, and Clarence M. Hamilton, administrator of James McHale, was made a party.

It appeared, in evidence, that since the filing of the original bill, John McHale had paid off the notes given for the balance of the purchase money.

At the hearing, the court found the issues for complainants, and decreed a conveyance of one-half the lands to John

McHale, and the other half to the heirs-at-law of James McHale; and that the defendants, except James Fleming, who had disclaimed all interest, pay all the costs. To reverse this decree this appeal was taken.

Messrs. HODGES, WARREN & POGUE, for the appellant.

The facts before the court do not show a resulting trust; such a trust is not founded on contract. *Stephenson* v. *Thompson*, 13 Ill. 190; *Bruce* v. *Roney*, 18 Ill. 67.

"A declaration by parol at the time that the purchase is made for another, does not constitute such a trust as can be enforced by the party for whom the purchase is alleged to be made." *Alexander et al.* v. *Tams*, 13 Ill. 225; *Kisler* v. *Kisler*, 2 Watts, 323; *Perry* v. *McHenry*, 13 Ill. 238.

"No arrangement made after, nor any parol agreement existing before, nor parol declaration at the time that the purchase is made for the benefit of some other person, will raise a trust," &c.; *Perry* v. *McHenry*, 13 Ill. 238.

"It is founded on the actual payment of money, and no other ground," and that "the trust results from the original transaction at the time it takes place, and at no other time." *Botsford* v. *Burr*, 2 Johns. Ch. Rep. 415; *Kelly* v. *Johnson*, 28 Mis. (7 Jones) 249; *Alexander et al.* v. *Tams*, 13 Ill. 225; *Rogers* v. *Murray*, 3 Paige 398.

2d. The complainants being minors at the time of the purchase, and the money paid being their wages, their mother was entitled to it, and no trust can arise in their favor, merely because the money they earned was invested in this land. Even if the trade was actually made by these boys, it is clear they acted as the agents of their mother.

3d. The fact that John McHale paid the balance of the purchase money after he had commenced suit, cannot operate in his favor; the trust cannot be raised by anything arising after the legal title has passed. *Alexander et al.* v. *Tams*, 13

Ill. 225; *Rogers* v. *Murray*, 3 Paige 398; *Buck* v. *Swanney*, 35 Maine 41.

4th. The evidence does not show that complainants paid any definite part, and no trust can arise. *Cross* v. *Norton*, 9 Mod. 233; 2 Atkins 74; *Sayre* v. *Townsend*, 15 Wend. 650; *McGowan* v. *McGowan*, 14 Gray (Mass.) 119; *Buck* v. *Warren*, same 122 (note); *Baker* v. *Vining*, 30 Maine 121; *White* v. *Carpenter*, 2 Paige 239; *Smith* v. *Barnhom*, 3 Sumner 462; *Freeman* v. *Kelley*, 1 Hoffman 90.

Messrs. ROBINSON & KNAPP, and Mr. R. M. KNAPP, for the appellees.

We contend, that from the facts in this case, as proven, a resulting trust arose in favor of the original complainants in this suit, to the lands in litigation. In view of the many decisions of this court upon the subject of resulting trusts, if they were the only authorities upon the subject, the law ought to be pretty well settled. As laid down by this court in general terms, repeatedly, "If one purchase land with the money of another, but takes the deed in his own name, a trust results by operation of law, in favor of the person whose money is used, and parol proof may be introduced to show whose money was applied to make the purchase." *Coates* v. *Woodworth*, 13 Ill. 654; *Williams* v. *Brown et al.*, 14 Ill. 200; *Bruce* v. *Roney*, 18 Ill. 72; *Franklin* v. *McEntyre*, 23 Ill. 91; *Loomis* v. *Loomis*, 28 Ill. 456.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

It will be more convenient to consider this bill, as an original bill filed for the purpose of decreeing the title to the lands described in it, out of the defendants' heirs at law of Mary McHale, deceased, and into John McHale, the complainant, claiming in his own right.

John McHale alleges that the land was purchased by him and his deceased brother, James, of I. M. Hurd; that they paid the first instalment of the purchase money, being three hundred dollars, the price to be paid being in all ten hundred and eighty dollars; that they were supposed by Hurd to be under age at the time, and as time was given for the residue of the purchase money, Hurd thought it most prudent that the deed should be made to their mother, Mary McHale, who should execute her note for the balance of purchase money, giving, at the same time, a mortgage on the land to secure its payment, and with the understanding by all the parties that they, John and James, should and would pay the note and satisfy the mortgage. They paid Hurd the annual interest on the note, took possession of the land and improved it.

Mary McHale died, leaving the defendants and complainant her only heirs-at-law. James then died, leaving complainant, John, and the defendants his only heirs-at-law.

The bill prays that one equal half part of the lands bought of Hurd, may be decreed to be the sole property of complainant, and the other half, the property of defendants and complainant in equal proportions, as heirs-at-law of the brother James, deceased.

This is the scope and object of this proceeding, and complainant's theory is, that as he and his brother contracted with Hurd for the purchase of the lands, and made the first payment on them as agreed, the execution of the deed to their mother only conveyed the legal title to her, which she held in trust for their benefit. That as they had, subsequently, paid off the note and mortgage, their mother, if living, would be decreed to convey the legal title to them, and, being dead, her heirs-at-law are under the same obligation and duty.

Do the facts show a resulting trust? A careful examination of the testimony satisfies us that it is fully and clearly established. Hurd's testimony, who was the vendor of the land, is so clear

in all its details, he seems so indifferent between all the parties, and speaks with such full knowledge, which his position enabled him to obtain, of the transaction, that the mind cannot doubt that the whole affair, from its inception to its termination, was the business and concern of James and John McHale alone, the name of their mother being used from prudential considerations merely. They paid down the first instalment, and the balance when due, paying interest regularly, took possession and improved the land. If all these do not establish a resulting trust in their favor, or that their mother held the legal title for their benefit, we do not know what facts would; they fulfill all the requisites of such a relation.

We agree with appellant, that a resulting trust can only arise in favor of a person who claims to have furnished the consideration money, when such consideration, or some aliquot part thereof, was furnished as part of the original transaction, at the time the purchase was made, and the claimant must have occupied a position originally, which would have entitled him to be admitted in the place of the person to whom the conveyance is made. *Perry* v. *McHenry*, 13 Ill. 227. Appellant insists, that as the purchase price of the land was ten hundred and eighty dollars, the sum paid by the young men, three hundred dollars, was not an aliquot part thereof, and such part must be paid, as, one-half, one-third, or the like. Technically, three hundred dollars were not an aliquot part of ten hundred and eighty dollars, because the latter divided by the former leaves a remainder. Yet it was the whole amount required as the first payment. It was in part performance of the contract of purchase, and all that was demanded at the time. Had the contract been one-third down, or one-half, and a less amount paid, then it could not be said an aliquot part was paid, but when, as in this case, a definite sum was to be paid, less than one-third, and it was paid, the contract to that extent, is performed. That this money, or

the note representing the money, was the property of these young men, can hardly be doubted. Hurd testifies they were made payable to the boys, and not amounting to quite three hundred dollars, they made up the deficiency. The notes were on D. & J. S. Beatty, who seem to think the notes were payable to the mother. They were for the work and labor of these boys, and if they were payable to the mother, the whole transaction as detailed by Hurd, satisfies us she had permitted the boys to appropriate them for their own use in the first payment of the land. She never paid one farthing of the consideration money, at any time. James and John contracted for the land in the first instance—paid the first instalment—paid interest on the deferred payment, and finally paid that—took possession of the land and improved it.

It is a case too plain for controversy or doubt.

The decree must be affirmed, except as to the costs against the infant defendant.

*Decree affirmed.*