(No. 31519.—

JOHN CRAVEN *vs.* JOHN R. CRAVEN *et al.*, Appellants.— (HERBERT CRAVEN, Appellee.)

*Opinion filed November 27, 1950.*

CRANE, KEARNEY, KORZEN & PHELAN, of Chicago, (WILLIAM G. CLARK, of counsel,) for appellants.

ALFRED M. LOESER, of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

March 11, 1947, the plaintiff, John Craven, brought an action in the circuit court of Cook County against the defendants, John R. Craven and Margaret [Marjorie] Craven, his wife, seeking the declaration of a constructive trust with respect to certain residential property and a resulting trust as to certain commercial property, and for an accounting. By their answer, defendants admitted they held title to the residential property for the benefit of plaintiff, but denied the material allegations of the complaint relative to the commercial property. Defendants also filed a counterclaim for an accounting. The cause was referred to a master in chancery, extended hearings

were held and more than two hundred exhibits were introduced in evidence. September 9, 1949, the master filed his report with the court, finding generally for plaintiff and recommending a decree accordingly. The cause was before the chancellor on September 16 and, again, on September 22, and, on the latter date, an order was entered substituting Herbert Craven, administrator of the estate of John Craven, deceased, as plaintiff, and setting the hearing on defendants' exceptions to the master's report for November 4, 1949. In the meantime, for some unexplained reason, the clerk of the court gave notice by publication that the cause would be called on October 4, 1949. No one appearing on October 4, the chancellor entered an order dismissing the cause for the want of prosecution. More than thirty days later, namely, on November 8, 1949, plaintiff filed a petition to vacate the decree of October 4. On the same day, the chancellor entered an order setting aside the decree of October 4, ordered the cause reinstated, and set it for hearing on December 16. Thereafter, defendants answered plaintiff's petition for the appointment of a receiver, argued their exceptions to the master's report and, later, made an unsuccessful motion to have the cause re-referred to the master to hear new evidence.

January 20, 1950, the chancellor confirmed the master's report, with one minor exception, and entered a decree directing defendants to convey both properties to the substituted plaintiff, Herbert Craven, the sole beneficiary under the will of John Craven, the original plaintiff, who died January 31, 1949. With regard to defendants' counterclaim for an accounting, the chancellor found that, as of May 31, 1948, John Craven owed defendants $1011, ordered defendants to render an accounting to Herbert Craven for the period from May 31, 1948, to the date of their conveyances to him, and reserved jurisdiction of the cause for this purpose. There being no prospective controversy

with respect to the final accounting which has not already arisen and been ruled upon in the original accounting, the decree entered is final and appealable. Defendants prosecute this appeal from the order of November 8, 1949, vacating and setting aside the decree of dismissal, entered October 4, 1949, and from all of the decree of January 20, 1950, except the part ordering them to convey the residential property. A freehold is necessarily involved.

Defendants' contention that the trial court had no jurisdiction to entertain the motion and enter the order of November 8, 1949, setting aside the decree of October 4, 1949, requires initial consideration. The decree of October 4, 1949, dismissing the cause for the want of prosecution was final in its nature. Following the entry of the order of November 8, 1949, defendants appeared generally and actively participated in all further proceedings. It is well established that where a court having general jurisdiction over the subject matter loses jurisdiction of a particular case as the result of the expiration of thirty days (or the term) following the entry of a judgment or decree dismissing the action, and where a motion to vacate is pending, the parties may, by appearing voluntarily and participating in further proceedings, revest the court with jurisdiction over their persons and the subject matter of the action. (*Rossiter* v. *Soper,* 384 Ill. 47; *Weisguth* v. *Supreme Tribe of Ben Hur,* 272 Ill. 541; *Grand Pacific Hotel Co.* v. *Pinkerton,* 217 Ill. 61; *Herrington* v. *McCollum,* 73 Ill. 476.) To avail themselves of the right to question the jurisdiction of the court, defendants should either have not appeared at all or limited their appearance to an objection against the jurisdiction of the court. (*Grand Pacific Hotel Co.* v. *Pinkerton,* 217 Ill. 61; *Herrington* v. *McCollum,* 73 Ill. 476.) This they did not do.

With respect to the decree of January 20, 1950, defendants contend the court erred both in declaring a resulting trust as to the commercial property and in its

adjudication relative to the accounting. During his life-time, John Craven, hereafter referred to as plaintiff, was married to Elizabeth Craven and was the step-father of both Herbert Craven, the substituted plaintiff, and John R. Craven, hereafter referred to as defendant. Plaintiff was, for many years, actively engaged in the retail coal business at 2816-18 West Van Buren Street, Chicago, and was assisted in the business by his wife, who handled all financial matters, and Herbert Craven. Plaintiff and his wife occupied the first-floor apartment of a three-apartment building at 704 North Laramie Avenue, Chicago, and the principal defendant, John R. Craven, and his wife, co-defendant, resided on the third floor of the same building. While the record is not clear, title to both properties was held either in the name of Elizabeth Craven, alone, or in the names of John and Elizabeth Craven, as joint tenants. In any event, upon the death of his wife on February 10, 1942, she leaving a will devising and bequeathing all her estate to him, plaintiff became the sole owner of the two parcels of real estate. The property at 2816-18 West Van Buren Street is only indirectly involved in this litigation.

At the time of his wife's death, plaintiff was about sixty years old, a heavy drinker, and able to transact his business affairs only to a very limited degree. Two days later, namely, February 12, 1942, he turned over the administration of his wife's estate and the management of his property to defendant, executing, in this connection, a written agency contract authorizing defendant to collect his wife's insurance, to pay funeral expenses and "to handle all other business transactions in connection with the property of every kind belonging either to me or my late wife, Elizabeth Craven, and collect all monies and pay all bills in connection with said property." It was orally understood that defendant would pay plaintiff $10 per week out of the income from the apartment building. About the same time, plaintiff relinquished the operation of his busi-

ness to Herbert Craven and engaged Anna Hornby to manage the office and keep the books. He also vacated his apartment at 704 North Laramie Street, but defendants kept their apartment and still reside there.

The assets in the estate of Elizabeth Craven were negligible and, as administrator with the will annexed and as plaintiff's agent, defendant was called upon to pay the debts of his mother's estate and certain considerable business obligations of plaintiff largely out of his own funds. In addition to managing the two parcels of real estate, paying taxes, making weekly payments to plaintiff, and incurring normal operating expenses, defendant embarked upon an extensive program of maintenance, repairs and major capital expenditures with respect to the apartment building, the details of which it is not necessary to recount. Suffice it to say that defendant was an electrician and able to perform painting and carpentry work, that he frequently used his own labor, and that, in the course of the next five years, he made the following improvements, among others: new chimney, new back porches, new fence and gates, new doors on garage, new storerooms and coal bins in basement, insulation of roof, new sinks in two apartments, remodelling of front entrance and first floor apartment, rewiring of the entire building, new light fixtures in all apartments, front hall and basement, new locks on all doors, front and rear, including the basement and garage, and new screens for the entire building.

In the early part of July, 1943, plaintiff entered into a contract to sell the property at 2816 West Van Buren Street to the adjoining landowner for $1000. Of this sum, plaintiff turned over $729 to defendant. Plaintiff retained the property at 2818 West Van Buren Street for the operation of his coal business but, on July 27, 1943, a dispute having arisen between him and his purchaser, he conveyed the parcel at 2818 West Van Buren Street to defendant without consideration.

On September 9, 1943, defendant obtained a deed to the apartment building from plaintiff, without consideration, under circumstances, which, according to plaintiff's testimony, amounted to fraud and the exercise of undue influence. In view of the fact that defendants admit they hold title to the property for the benefit of plaintiff and the master refused to permit defendant to testify about this matter, plaintiff's testimony will not be recounted. On the other hand, for purposes of continuity, it must be observed that plaintiff did not know he had executed the deed nor did he discover that title was in defendant until 1946 when he tried to negotiate a loan.

In December, 1943, the office and other improvements at 2818 West Van Buren Street were destroyed by fire. The loss was insured only to the extent of $719 and, upon receipt of this sum, plaintiff immediately turned it over to defendant. There being insufficient funds to rebuild, the business was continued in a temporary office until May, 1944, when Herbert Craven purchased the lease on a nearby coal office and yard at 310 South California Avenue for a nominal consideration and moved the business to that location. Several months later, the property at 310 South California Avenue being offered for sale, plaintiff instructed defendant to purchase it for him. Plaintiff's testimony that he purchased the property was corroborated generally by Herbert Craven and Anna Hornby, Herbert Craven testifying, and the proof showing, that he borrowed $200 on October 9, 1944, and transmitted this sum to defendant to assist plaintiff in paying for the property. Defendant entered into a contract to purchase the property on October 9, 1944, and, five days later, took title in his own name. Although testifying at great length about other matters, with respect to the purchase of the property at 310 South California Avenue, defendant merely asserted that the $200 received from Herbert Craven constituted the repayment of a loan. The real-estate contract, dated October 9, 1944,

reveals that the purchase price was $2200, and that defendant paid $700 down and agreed to pay the balance in eighteen monthly installments, with an option to pay the full price within thirty days and receive a cash discount of $200. There is no evidence as to how or when the balance was paid, but, after October 14, 1944, defendant permanently discontinued making weekly payments of $10 to plaintiff, explaining that he needed the money to pay for the new coal office.

At no time did defendant ever render an accounting to plaintiff with respect to the management of his property. In 1945, defendant sold the vacant lot at 2818 West Van Buren Street and retained the net proceeds of $207. In 1946, plaintiff, upon discovering that defendant held title to the apartment building at 704 North Laramie Avenue and the parcel at 310 South California Avenue, demanded that he convey both properties to him. Defendant refused to convey the real estate at 310 South California Avenue under any condition, asserting that he had purchased it for himself, in his own name and out of his own funds. As to the apartment building, defendant offered to execute a deed to plaintiff upon payment of an alleged balance of $10,000 due to him as his agent. This action followed. By 1948, when the cause was heard, the property at 704 North Laramie Avenue, worth $9000 in 1942, was valued at $25,000, and the parcel at 310 South California Avenue was estimated to be worth between $5000 and $7500.

The only real estate the title to which is controverted is the property at 310 South California Avenue. The chancellor found that this property was acquired at the instance of plaintiff for use in his business and that it was purchased with his funds without any contribution from defendant. More specifically, the chancellor found that the purchase price was paid by the application of the $729 received by defendant from the proceeds of the sale of the property at 2816 West Van Buren Street, the $720 collected

by defendant from plaintiff's fire insurance, the $200 delivered by Herbert Craven to defendant on behalf of plaintiff, and by the application of other funds belonging to plaintiff. On the basis of these findings, the chancellor held that a resulting trust arose in favor of plaintiff at the time the property was acquired and that plaintiff, being the equitable owner, was entitled to a conveyance of the legal title from defendants.

A resulting trust is created by operation of law and arises out of the presumed intention of the parties as evidenced by their acts and conduct. (*Tuntland* v. *Haugen*, 399 Ill. 595; *Murray* v. *Behrendt*, 399 Ill. 22.) Where property is purchased by one person and title taken in the name of another, courts of equity will, upon proper proof, raise a trust in favor of the party paying the purchase price. (*Kane* v. *Johnson*, 397 Ill. 112; *Belleson* v. *Ganas*, 394 Ill. 557.) A resulting trust arises, if at all, at the instant legal title passes to the named grantee, by virtue of a consideration advanced at or before that time and not on the basis of subsequent acts. (*Tuntland* v. *Haugen*, 399 Ill. 595; *Hille* v. *Barnes*, 399 Ill. 252.) The burden of proof is upon the party seeking to establish a resulting trust and the evidence of his payment of the purchase price must be clear, convincing and unmistakable. *Jones* v. *Koepke*, 387 Ill. 97; *Heineman* v. *Hermann*, 385 Ill. 191.

Defendant asserts that the trial court erred in declaring a resulting trust because it was mathematically impossible for him to have used any of plaintiff's money in the purchase of the property at 310 South California Avenue and for the further reason that plaintiff failed to prove by clear and unequivocal evidence that he paid the purchase price. The first contention made results from the fact that a breakdown of the receipts and expenditures allowed by the chancellor shows that, on October 14, 1944, plaintiff was indebted to defendant in the sum of $215. In view of the circumstances that defendant never rendered an account to

plaintiff, that he customarily made disbursements in excess of receipts, and that, at the time he took title to the parcel at 310 South California Avenue, he had already acquired plaintiff's apartment building, then worth at least $10,000, we do not regard the state of accounts between the parties, as of the date title passed, as having any material bearing on the issue of a resulting trust. On the other hand, the finding of the chancellor that three specific sums belonging to plaintiff and aggregating $1649 were applied to the purchase price is supported by clear and convincing evidence and is not contrary to any evidence offered by defendant. As to the balance of the purchase price, it being manifestly the intention of the parties that plaintiff was to become the owner of the new property, defendant is properly chargeable with advancing the sum necessary to complete payment as a loan. Just as the large excess of defendant's disbursements over receipts during his first year as agent for plaintiff must be regarded as a loan or advance, so, too, must defendant's payment of part of the purchase price for the business property be regarded as a loan. This is particularly true because defendant had already obtained a deed to the residential property, plaintiff's only asset, thus providing himself with security for his advancements and effectively depriving plaintiff from borrowing any considerable sum elsewhere.

Only the challenged accounting remains to be considered. The chancellor allowed disbursements aggregating $15,048, found that defendant had received $14,037, in rentals ($9226) and miscellaneous receipts ($4811), and held that as of May 31, 1948, plaintiff was indebted to defendant in the sum of $1011. Defendant contends that the chancellor erred (1) in disallowing disbursements for capital expenditures in the sum of $3058, (2) in disallowing expenditures for maintenance and miscellaneous items aggregating $1390, (3) in denying his claim for rent for plaintiff's use of the property at 310 South California Ave-

nue, and (4) in disallowing his claim for compensation for managing plaintiff's real estate. Defendant having been adjudged to be holding the bare legal title to the business property for the sole benefit of plaintiff, it is plain that he is not entitled to rent for plaintiff's use of the property. It is equally clear that the chancellor did not err in disallowing excessive expenditures by defendant for capital improvements. Under the contract of February 12, 1942, plaintiff authorized defendant "to handle all other business transactions in connection with the property * * * and collect all monies and pay all the bills in connection with said property." The expenditures contemplated by the contract were limited to those reasonably necessary for the maintenance of the apartment building as evidenced by the fact that plaintiff virtually retired from business and looked to the rental income of the building for his support. He did not authorize defendant to make innumerable expensive capital improvements, thus depriving himself of income, and the chancellor found that, of capital expenditures of almost $5000, certain items, aggregating $3058, were unnecessary, unauthorized and improper under the circumstances. Where a trustee or agent makes unauthorized improvements he may or may not be reimbursed to the extent the property is benefited, depending upon whether he acted in good faith or in bad faith. (Scott on Trusts (1939 ed.) sec. 245.1; *Kiesendahl* v. *Ganoe,* 94 Ore. 283; *Harrison* v. *Miller,* 124 W. Va. 550; *Dickel* v. *Smith,* 42 W. Va. 126; *Cawthon* v. *Cochell,* Tex. Civ. App., 121 S.W. 2d 414.) As stated in *Dickel* v. *Smith,* 42 W. Va. 126, "A trustee cannot improve his *cestui que trust* out of the estate, nor can he ordinarily charge the *corpus* of real estate with improvements." From the facts stated, it is clear that defendant is not entitled to unrestricted reimbursement for capital expenditures and that the chancellor was correct in disallowing defendant's claims for the re-

wiring of the building, new light fixtures, new screens, new locks, new fence and other similar items aggregating $3508.

The disallowed claims for maintenance, repairs and miscellaneous items appear in an even more unfavorable light. Not only were these expenditures largely unnecessary and unauthorized but, of the total of $1390 claimed, by far the larger part consists of defendant's claims for his own labor at the rate of $2 an hour. As agent from February 12, 1942, to September 9, 1943, and as a trustee by operation of law after the latter date, defendant was guilty of self-dealing. He attempted to increase plaintiff's indebtedness by performing unauthorized services employing his own labor. Lastly, since an agent or trustee cannot recover fees or commissions unless he has faithfully discharged his duties toward his principal or the beneficiary of the trust, (*Steinmetz* v. *Kern,* 375 Ill. 616; *Lehman* v. *Rothbarth,* 159 Ill. 270,) it follows that the chancellor did not err in disallowing defendant's claim for compensation.

The decree of January 20, 1950, is affirmed.

*Decree affirmed.*