(No. 32958.—

LUCINDA WRIGHT, Appellant, *vs.* EDSEL WRIGHT, Appellee.

*Opinion filed March 17, 1954.*

H. F. SIMONSON, and LEWIS TANNER, both of Champaign, for appellant.

C. E. TATE, of Champaign, for appellee.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, Lucinda Wright, brought this action in the circuit court of Champaign County against her son, Edsel Wright, seeking a determination that he holds the legal title to an improved parcel of real estate as trustee for her, an accounting, and a decree compelling conveyance of the property to her. She appeals from a decree dismissing her complaint for want of equity. A freehold is involved.

From the pleadings and the evidence it appears that commencing in 1942, plaintiff operated a student rooming house in Urbana near the University of Illinois campus. Edsel Wright, the youngest of plaintiff's five children, was then sixteen years of age. Until 1946, plaintiff occupied the premises as tenant of the owner, William T. Hank. De-

fendant lived at home and was supported by his mother's earnings from operating the rooming house until March of 1944, when he entered military service, where he remained until October of 1945.

In 1946, Hank decided to sell the house and lot and offered plaintiff the first opportunity to buy for the sum of $7600. Unable to finance the transaction through a conventional loan or otherwise, plaintiff requested defendant to apply for a "G.I. loan" to assist her in raising the purchase price. Defendant expressed his willingness to use a G.I. loan for this purpose if it was permissible. Plaintiff was advised that title would have to be taken in defendant's name. Plaintiff said that she would pay the mortgage debt. There were several conversations to this general effect in the presence of members of the family. One of plaintiff's married daughters testified that she heard her mother ask defendant to help her by procuring a "G.I. loan," and that "Mother stated that she had tried to get the loan on the home but that she was unable to do so; it was suggested to mother that since my brother had been in service he could get a loan. He was then approached to get it, and he agreed to do same." Plaintiff testified that at the time of the transaction defendant said: "I don't want the property because it is in my name only and you will have to pay for it, Mother, because I don't want it."

Negotiations with Hank resulted in a contract for sale of the property, dated May 27, 1946, between Hank and defendant, who was designated as the purchaser. Plaintiff and Hank agreed upon the terms incorporated in the contract by which defendant agreed to pay $7600 in cash from a G.I. loan and to make immediate application for the loan. The contract recites that since defendant and his mother were in possession of the premises and the former contemplated asking for and procuring a G.I. loan, and because it was deemed advisable to paint the house prior to a time when the loan could be closed, defendant

would cause the house to be painted; that, in the event of defendant's inability to procure the loan and pay for the purchase of the property, Hank would pay up to $200 towards the cost of the painting; that if, however, the loan was procured as anticipated, Hank would not be liable for any part of the cost of the painting, and that upon consummation of the sale defendant should pay Hank the full purchase price of $7600.

Defendant obtained a G.I. loan of $6600 through a local building and loan association in the late summer of 1946. Its secretary testified that plaintiff initiated the negotiations for the loan; that defendant told him he was willing to use his G.I. Bill of Rights to enable his mother to pay for the house, and that he agreed to hold title in his name "but that the property would be his mother's." Additional financing of $1000 was required. Both plaintiff and defendant solicited a loan of this amount from a professor at the University, who agreed to advance the money and take a second mortgage as security. With the proceeds of the two loans, payment of the contract price of $7600 was made to Hank. Although neither plaintiff nor defendant contributed any of their own funds to the purchase price, plaintiff paid $206 for painting the house out of her own bank account. No other cash payments were made by either of the parties at the time the deed was delivered. The deed was recorded on September 24, 1946.

After the transaction was completed, plaintiff continued to do the work of operating the rooming house in the same manner as in the preceding four years. She collected the rent, made repairs, paid the bills, and met the mortgage payments. According to her uncontroverted testimony, defendant did very little work around the premises during the time he lived in the house, and did not help her in any way in paying the bills or in meeting the mortgage loan installments. Defendant was in military service a second time from October, 1947, to March, 1949. Following his

discharge, he lived in the rooming house until January of 1951, when he moved to another house. He was married in June of 1951. In the same month, during the absence of his mother on a visit with a daughter in Michigan, defendant and his wife moved into the house. Upon plaintiff's return in July, defendant announced: "I am going to take this property, and I am going to give you a room, and clothing and hospital bills, and going to take care of you." Shortly afterwards, a controversy arose over plaintiff's occupancy of a room. In October, defendant promised plaintiff an allowance of $30 a month. Later, he refused to give her the amount promised, saying he would give her but $15. The relationship between plaintiff and defendant deteriorated to such an extent that he started a forcible entry and detainer action against her. The present action was then brought to enjoin that suit and to establish plaintiff's interest in the premises.

Plaintiff contends that the trial court erred in not holding that a resulting trust arose for her benefit at the time the property was purchased in defendant's name, and, in the alternative, in failing to hold that a constructive trust was created for her benefit.

Applicable rules with respect to the doctrine of resulting trusts are firmly established. A resulting trust, characterized as an "intent enforcing" trust, (2A Bogert on Trusts and Trustees, sec. 451,) is created by operation of law and has its roots in the presumed intention of the parties. (*Craven* v. *Craven,* 407 Ill. 252; *Tuntland* v. *Haugen,* 399 Ill. 595; *Murray* v. *Behrendt,* 399 Ill. 22; *Cook* v. *Blazis,* 365 Ill. 625; *Tritchler* v. *Anderson,* 334 Ill. 211.) A court of equity will raise a resulting trust where land is bought with the money of one person and title is taken in the name of another. (*Kane* v. *Johnson,* 397 Ill. 112; *Link* v. *Emrich,* 346 Ill. 238.) It may be paid directly or indirectly to the grantor, and by or for the resulting trust claimant. (2A Bogert on Trusts and Trus-

tees, sec. 455.) A resulting trust arises, if at all, at the instant legal title is taken and the title vests. (*Craven* v. *Craven*, 407 Ill. 252; *Hille* v. *Barnes*, 399 Ill. 252; *Spina* v. *Spina*, 372 Ill. 50.) Acts subsequent to the taking of title by the alleged trustee have no bearing upon the question whether a resulting trust was raised. (*Craven* v. *Craven*, 407 Ill. 252; *Briscoe* v. *Price*, 275 Ill. 63.) The burden of proof rests upon the party seeking to establish a resulting trust, and the evidence, to be effective for this purpose, must be clear, convincing and unmistakable. *Paluszek* v. *Wohlrab*, 1 Ill. 2d 363; *Jones* v. *Koepke*, 387 Ill. 97.

To sustain her claim of a resulting trust, plaintiff directs attention to the facts that she furnished the only consideration required other than the proceeds of the two mortgage loans, the $206 paid for the painting,—incidentally the only out-of-pocket consideration paid by either plaintiff or defendant,—and that defendant neither intended to pay nor paid any part of the mortgage debt. Although payment for the painting did not constitute a partial payment of the purchase price named in the contract, it was nonetheless a part of the transaction. The contract provided that if the sale was not completed the owner of the property would reimburse defendant to the extent of $200. For all practical purposes, the cost of the painting was an integral part of the purchase price; it was vital to the completion of the transaction. Hank had decided to sell his house and was so insistent upon it being painted that a provision to this effect was included in the contract.

Summarized, the situation is that plaintiff desired to buy the property in order to continue operating it as a rooming house. Unable to finance its purchase, she asked her son to obtain a loan from the Veterans' Administration. He agreed upon the express understanding that while title would be taken in his name his mother would make the payments on the loan. Defendant was not interested in buying the house or in making the necessary payments

on the mortgage indebtedness incurred to finance the purchase. Apart from title being taken in defendant's name the transaction differs but little, if at all from the typical situation in which one person advances the funds for the purchase of property and title is taken in another. Defendant was the purchaser in name only.

Uncontradicted evidence establishes that at no time during the negotiations incident to the sale and conveyance was there any intention manifested by either plaintiff or defendant that the latter should have any beneficial interest in the property. Indeed, defendant never challenged his mother's ownership until domestic discord developed five years later. The mother initiated the negotiations with Hank and pursued them to a conclusion. Title was taken in the son's name for the convenience of his mother and for her sole benefit. Economic necessities motivated the form of the transaction; without the G.I. loan, the property could not have been purchased. Title was taken in defendant's name and he signed the contract for sale, the mortgages and the mortgage notes as a means of extending credit to plaintiff. In form, the son was the purchaser and the mortgagor; in substance the mother was the purchaser and the mortgagor. The transaction in reality was in the nature of a loan from defendant to plaintiff of funds borrowed by defendant. The transaction fairly admits of the construction that defendant's title was necessary to accomplish his borrowing and was operative to secure him as to his loan to plaintiff.

Defendant maintains that he furnished the entire consideration for the purchase of the property. Literally, this is true; he alone signed the two notes and the mortgages securing them. An examination of the entire transaction shows, however, that the proceeds of the mortgage notes were paid to the seller for the direct benefit of plaintiff. The situation is essentially the same as if the payment to the seller was a payment by plaintiff of the funds bor-

rowed by the mother from the son. Under such circumstances, the prerequisites to the raising of a resulting trust have been met. The evidence is clear and convincing that at no time did either plaintiff or defendant intend that he should have any beneficial interest in the property. He alone took title; he alone signed the notes and mortgages. His every act was, nevertheless, for and on behalf of plaintiff. His function in the transaction was to extend to plaintiff his credit, which he enjoyed because of his status as a veteran. Actually, his loan was of a lesser degree than ordinarily present in other cases where resulting trusts have been decreed for the reason that his loan was of his credit rather than of money which belonged to him.

It is recognized that the payment of money by a transferee may constitute a loan to another for whose benefit a resulting trust will be raised. 3 Scott on Trusts, sec. 448, says: "If a person pays the purchase price for a conveyance made to himself, it would seem at first blush as if there would be no ground for imposing a resulting trust. But suppose that the payment is made not for himself but for another. Suppose that B lends money to A in order that A may purchase land from X, but B pays the purchase money directly to X and takes title in his own name. It is true that in that case the money which was advanced by B never actually belonged either legally or equitably to A. Just before B paid it over to X, the money belonged to B; just after B paid it over to X, the money belonged to X. There were not two separate transactions in which B first lent the money to A, and A subsequently paid it over to X, in which case it would have been clearly A's money which was paid to X. The courts have rightly held, however, that it is immaterial that the loan to A and payment to X constitute a single transaction. A loan may be made in other ways than by handing the money over to the borrower. It may be made by paying it to another at the borrower's request. Hence although B pays the

purchase money directly to X, yet in substance it is A's money, being lent to A by B. There is therefore a resulting trust for A. B, however, having taken the title as security for the repayment of the loan to A, cannot be compelled to convey the land to A unless and until A pays B the amount of the loan. A's equitable interest by way of resulting trust therefore is subject to B's security interest."

The Restatement of the Law of Trusts, vol. 2, sec. 448, is to the same effect: "Where a transfer of property is made to one person and the purchase price is advanced by him as a loan to another, a resulting trust arises in favor of the latter, but the transferee can hold the property as security for the loan." This has been called a "resulting trust in the nature of a mortgage," (*Scott* v. *Beach,* 172 Ill. 273, 276,) or "a resulting trust by way of a mortgage." 2A Bogert on Trusts and Trustees, p. 438.

Similar situations have been presented in this court. More than a century ago, in *Reeve* v. *Strawn,* 14 Ill. 94, Reeve claimed that Strawn purchased lands under an agreement that Reeve should be allowed to pay the amount of the purchase money and interest, and should then have a conveyance of the property; that Strawn agreed to loan him the money to make the purchase and to take a deed to himself, by way of mortgage, to secure its repayment, and that the money paid for the land was the money so loaned. Strawn denied that a loan was made, insisting that he paid his own money and bought the land in his own name and for his own use, and that any agreement between the parties was a parol agreement for the sale of the land by Strawn to Reeve, after Strawn should have purchased it. This court observed (page 96): "If the facts are as insisted by the complainants, then a resulting trust is created, in the nature of a mortgage, and there can be no doubt about the right of the complainants to redeem; but if, on the other hand, there was no loan of the purchase money, and Strawn paid his own funds for the land, no parol

agreement between the parties, that Strawn should purchase for the use and benefit of Reeve, or that Reeve should, at any time, have the right to purchase it, will entitle the complainants to the relief sought, for then it is nothing but a simple parol agreement for the sale of land, which is at once cut off by the plea of the statute of frauds, which has been interposed. The serious question in the case, then, is one of fact."

In *Fleming* v. *McHale*, 47 Ill. 282, two boys sought to purchase land and made the initial payment of $300 on the total purchase price of $1080. The grantor, believing them to be minors, was unwilling to take their notes and mortgage for the balance of the purchase price for the deferred payments. He made the deed to the mother of the boys and took her note and mortgage with the understanding that the sons were to pay. They did pay the debt, and when the question arose after the mother's death, this court held that a trust resulted in their favor. We said: "the whole affair, from its inception to its termination, was the business and concern of James and John McHale alone, the name of their mother being used from prudential considerations merely. They paid down the first instalment, and the balance when due, paying interest regularly, took possession and improved the land. If all these do not establish a resulting trust in their favor, or that their mother held the legal title for their benefit, we do not know what facts would; they fulfill all the requisites of such a relation. * * * She never paid one farthing of the consideration money, at any time. James and John contracted for the land in the first instance—paid the first instalment—paid interest on the deferred payment, and finally paid that—took possession of the land and improved it. It is a case too plain for controversy or doubt." 47 Ill. 282, 287, 288. There is no difference in principle between fastening a resulting trust upon the factual situation in the *Fleming case* and in holding that a resulting trust attaches here.

In *Scott* v. *Beach*, 172 Ill. 272, Beach had orally agreed to buy certain lands from Boden for $4800. Subsequently, Scott agreed verbally to advance Beach the necessary funds upon the condition that the property be conveyed to Scott as security for the loan. Beach paid Scott in excess of $1300 upon the loan and made improvements upon the property while in possession. In an action for an accounting and to have the contract established by a decree of court, Scott denied that he had loaned Beach any money and alleged that he purchased the property with his own money and for his own use and that Beach was merely a tenant. Affirming a decree raising a resulting trust in favor of Beach, this court said (p. 276) : "The decision of the trial court was evidently based upon the theory that appellant loaned the money to appellee to purchase the land in controversy and took title to the same in himself as security, thus creating a resulting trust in favor of appellee by way of a mortgage, and if the evidence sustains this theory there can be no question as to the correctness of the decision." To the same effect, see *Craven* v. *Craven*, 407 Ill. 252, 261; *Cook* v. *Blazis*, 365 Ill. 625; *Niland* v. *Kennedy*, 316 Ill. 253; *Towle* v. *Wadsworth*, 147 Ill. 80, 96; *Hilker* v. *Radcliff*, 274 Ill. App. 463, 466.

The principle was reaffirmed in the relatively recent case of *Frasier* v. *Finlay*, 375 Ill. 78. The complaint to establish a resulting trust alleged that $5000 advanced by the defendant was in the nature of a loan to be secured by real estate. It was pointed out that "In such case a resulting trust would arise in favor of the plaintiff in the whole of the real estate purchased, subject to the defendant's right to hold the title as security for the repayment of the amount advanced." 375 Ill. 78, 81.

Nor is our conclusion avoided by defendant's contention that, under the circumstances, a gift from mother to son is to be presumed. (*Kartun* v. *Kartun*, 347 Ill. 510; *Lutyens* v. *Ahlrich*, 308 Ill. 11.) The presumption of gift

is not a conclusive one; and where, as here, the proof is clear, the presumption is rebutted. *Cook* v. *Blazis*, 365 Ill. 625. See: 2 Restatement of the Law of Trusts, sec. 443.

Defendant relies, however, upon the familiar maxim "He who comes in equity must come in with clean hands." Specifically, he contends that to declare a resulting trust would be to sanction illegal transactions. The specific reference is to the fact that the G.I. loan was obtained by defendant and to the fact that the income from the property was reported in income tax returns in his name. From the record it appears that the plaintiff's action with respect to the income tax returns was apparently taken upon legal advice and to achieve consistency with the record title and rent control registration. With respect to the G.I. loan plaintiff appears to have made full disclosure to all interested parties. Defendant's answer did not make the defense of unclean hands, no evidence was introduced or argument advanced upon the trial in support of this theory, and the circuit court reached its conclusion upon the substantive theories put in issue by the pleadings without considering the point now raised in finding "that the plaintiff has not maintained the allegations in her complaint contained." Obviously this is neither the time nor the place to decide the question of the legality of the transaction.

We hold that the plaintiff established a resulting trust in the property; that defendant holds the property as security for the two mortgage loans, and that when the balance of the mortgage indebtedness is paid, defendant should convey title to plaintiff.

The decree of the circuit court of Champaign County is reversed and the cause remanded, with directions to enter a decree in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*