Percy J. Barker, Plaintiff-Appellant, v. Leslie C. Barker, Milton Miller and La Salle National Bank, a National Banking Association, as Successor-Trustee Under Trust Number 2485, Defendants-Appellees.

**Gen. No. 48,363.**

First District, Third Division.

June 6, 1962.

Hoffman & Davis, Crowley, Sprecher, Barrett & Karab, and David Pottishmann, all of Chicago, for appellant.

Richard F. Watt and Joseph N. DuCanto, of Chicago (Cotton, Fruchtman & Watt, of Chicago, of counsel), for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff Percy J. Barker appeals from a decree dismissing his suit for establishment of a resulting trust on the three-quarter beneficial interest of his brother Leslie C. Barker in a 16-story apartment hotel at 20 East Delaware Place, Chicago. The property is now held in trust by defendant LaSalle National Bank for the benefit of Leslie and defendant Milton Miller who holds the remaining one-quarter beneficial interest therein. The matter was referred to a master in chancery who held lengthy hearings comprising nearly 2800 pages of transcript and made a report finding in favor of defendants and recommending that the suit be dismissed. The court overruled exceptions, approved the report and dismissed the suit.

The principal issue is whether the decree is against the manifest weight of the evidence in finding, in effect, that plaintiff did not furnish any funds for the purchase of the property with the intent of acquiring the beneficial interest therein for himself; that while a portion of the funds came from him, they were furnished in payment of a debt owing by him to defendant Leslie with the intention that Leslie, and not plaintiff, acquire the property. Other points relate to particular factual findings and can be dealt with in our general discussion.

Defendants also raise the question of laches, nine years having elapsed before the instant suit was in-

stituted, during which time defendant Leslie acted as the owner, apparently paid all taxes on the income from the property, and made no account to plaintiff Percy. Although the profits were substantial, Percy made no claim therefor.

Leslie admits that Percy furnished some of the necessary funds, but maintains he did so to satisfy a debt owed under an agreement dissolving a former partnership. Nor does Leslie deny that in the purchase Percy advised him and did some things to aid in the acquisition of the property. These are explained on the basis of their relationship and Percy's desire to see Leslie acquire the property as his own. The case is thus reduced to issues of fact.

Percy is the older brother. He came to Chicago from Canada some years before Leslie, who followed in 1926 and was first employed by Percy and later engaged in several real estate ventures with him, through which a partnership developed. Friction arose between the brothers and in 1941 they entered into a written agreement for the dissolution of their partnership. Neither party introduced a copy of the agreement. Leslie did not have one. At first plaintiff indicated that one was available to him. Later he and his counsel asserted that this was a misapprehension. Percy admitted he had removed some records from the office of the building prior to the suit and it was not established whether the agreement was included. Under the agreement Leslie was to receive $50,000, of which it appears Percy then paid approximately $20,000. While Percy contends that the total amount owed was to reflect sums previously overdrawn from their accounts by Leslie, both the attorney who drew up the agreement and Leslie denied this, and the master and chancellor accepted their version. Therefore, when Delaware was purchased in 1944, about $30,000 was still owing by Percy to Leslie. In the

interim Percy and Leslie continued to have dealings despite the agreement terminating their partnership.

Defendant Leslie testified he heard of the opportunity to purchase Delaware through an attorney who arranged the transaction. Leslie testified that when he told plaintiff about it and requested payment, plaintiff replied that he "would be able to do that now, he had his hands on some money, and that if I [Leslie] needed now to go into a deal like this, that he could come up with as much as he could of what he owed me at this time." Leslie also testified that when plaintiff Percy delivered his check for $10,000 to enable Leslie to make the first payment in the transaction, plaintiff said: "This is $10,000 less I owe you [Leslie]." Additional sums were paid by Percy and were used to enable Leslie to acquire his interest in the property. Leslie, in order to obtain further funds necessary to acquire Delaware, signed a note for a loan from the South East National Bank for $32,500.

Percy contends that he was also on this note for $32,500, but his testimony is seriously impeached. His signature appears on the face of the note and on the reverse side as guarantor. It also appears as guarantor on the back of a subsequent renewal note. A bank employee testified that the bank's records indicated that plaintiff Percy was not a borrower. Experts testified that Percy's signature on the renewal note was made with a ball point pen and that such pens were not commercially available at the time the note was made and hence the signature was affixed at a later date. This testimony was neither refuted nor explained by plaintiff. It is undisputed that shortly before the filing of this suit, plaintiff removed some records from the Delaware office and that thereafter these particular notes were not located again by Leslie until he saw them in plaintiff's counsel's possession

when his (Leslie's) deposition was taken. The master concluded that the evidence taken as a whole did not support plaintiff's testimony that he signed either note as maker or guarantor.

Plaintiff Percy also produced a two-page copy of a document concerned with the purchase of units of beneficial interest which were to be used in connection with acquisition of the property. This differed materially from the copy produced by Leslie, on which Leslie's signature appeared as well as Percy's. Experts testified that Percy's signature on his copy was written with a different pen and probably at a different time. This was not refuted by Percy. Percy's testimony is further discredited by a letter he wrote to a witness, the defendant Miller, anticipatory to Miller's testimony. The master found that this appeared to be a clear attempt to induce Miller not to testify, or if he should, to influence his testimony in favor of plaintiff. From all this and more, the master found that plaintiff's testimony was frequently unreliable, often confused and confusing and sometimes impeached.

There are other convincing facts not compatible with plaintiff's version of the intent of the parties at the time of the transaction and subsequently. Partnership returns for the years involved show Leslie and one Gotlieb and later Leslie and Miller as the partners and report as Leslie's share of the income a total of some $144,920.55. No reasonable explanation is made as to why plaintiff Percy permitted Leslie to keep this money if he were only Percy's nominee.

Plaintiff testified that he himself never reported any income received from the property. However, in his objections to the master's report he said that for the first three years involved, 1944–1946, he was entitled to $8065.17 of the profits and did in fact receive $12,148. This apparent contradiction, as well

25

as defendant's assertion that plaintiff really sued because of recent personal business reversals, could have been resolved by plaintiff's production of his income tax returns for those years. Despite requests and subpoenas duces tecum and repeated indications that they would be forthcoming, plaintiff did not produce the returns. He did not satisfactorily establish that he or his accountant did not have them and he successfully resisted a motion that he be ordered to request copies, as was his right, from the Internal Revenue Service.

Where a party having in his possession or available to him the necessary evidence to determine an issue in a case fails to produce it, it is fair to draw the inference that if produced, the evidence would be unfavorable to him. Butler v. O'Brien, 8 Ill2d 203, 133 NE2d 274; Prudential Ins. Co. v. Bass, 357 Ill 72, 191 NE 284; Southwest Federal Sav. & Loan Ass'n v. Cosmopolitan Nat. Bank, 23 Ill App2d 174, 161 NE2d 697; Zegarski v. Ashland Sav. & Loan Ass'n, 4 Ill App2d 118, 123 NE2d 855; Dishinger v. Bon Air Catering, Inc., 336 Ill App 557, 84 NE2d 562.

Other points weakened plaintiff's case. A brief recital of some will suffice. Shortly after Delaware was purchased plaintiff testified in post-judgment proceedings against him in an unrelated matter that he owned neither personalty nor realty, was practically penniless and was employed as a janitor (at a building he really owned). At the hearing Percy merely testified that he had no recollection of the incident. Members of the family testified that plaintiff told them the building was Leslie's and also testified as to his later vengeful spirit toward his brother.

On the other hand, there are facts which are not consistent with our conclusion that plaintiff had no interest in the transaction. For example, Percy together with one Gotlieb, who also had an interest in the

property, jointly signed a note and obtained a loan at a bank for $44,783. While no explanation is given for this action by Percy, it appears that the accommodation by Percy to Leslie was slight, since the loan was amply secured by beneficial certificates in the property. As a matter of fact, the loan was paid within a few months thereafter out of funds derived from the retirement of the units of beneficial interest.

■ We deal with a relationship between brothers. They had worked together intimately over the years. Their relationship was once ruptured and then at least partially renewed. Where affection ends and jealousy or greed takes over, it is difficult to say. In Stoner v. Stoner, 351 Ill App 304, 115 NE2d 103, we were presented with a situation similarly reflecting conflicting emotions. As we said there: "In family transactions, who can fully understand all the underlying motives, inducements, and intangible considerations?" Supra, at p 313. Examining the whole record in the instant case we are convinced that what Percy did in this transaction was motivated by instincts of generosity for his younger brother and was not for the purpose of acquiring any interest for himself. This was obviously the conclusion of the master and chancellor.

■ The findings of a master when confirmed by the decree will not be disturbed unless manifestly against the weight of the evidence. Gallagher v. Girote, 23 Ill2d 170, 177 NE2d 103; Rizzo v. Rizzo, 3 Ill2d 291, 120 NE2d 546; Freymark v. Handke, 415 Ill 360, 114 NE2d 349; Newman v. Youngblood, 394 Ill 617, 69 NE2d 309; Presbyterian Distribution Service v. Chicago Nat. Bank, 28 Ill App2d 147, 171 NE2d 86; Cuneo Press, Inc. v. Warshawsky & Co., 24 Ill App2d 163, 164 NE2d 258.

■ There is no dispute of substantial character on the question of law. A resulting trust is created by

27

the operation of law, arising from the presumed in-tent of the parties. West v. Scott, 6 Ill2d 167, 128 NE2d 734; Wright v. Wright, 2 Ill2d 246, 118 NE2d 280; Craven v. Craven, 407 Ill 252, 95 NE2d 489. For this reason it is often termed an "intent enforcing" trust. The enforced intent is founded on the acts of the parties at the time title is taken. Kane v. Johnson, 397 Ill 112, 73 NE2d 321. The resulting trust frequently arises when real estate is purchased with the funds of one person while title is taken in the name of another. Kane v. Johnson, supra; Belleson v. Ganas, 394 Ill 557, 69 NE2d 321; Lutyens v. Ahlrich, 308 Ill 11, 139 NE 50. The burden of proving the resulting trust is on the party who seeks its establishment. Wright v. Wright, supra; Kohlhaas v. Smith, 408 Ill 535, 97 NE2d 774. Hille v. Barnes, 399 Ill 252, 77 NE 2d 809; Restatement, Law of Trusts, § 458. While the party who would establish the resulting trust must do so by clear, convincing and unequivocal evidence, the evidence necessary to rebut the presumption then raised need not be as strong. Jones v. Koepke, 387 Ill 97, 55 NE2d 154; Dodge v. Thomas, 266 Ill 76, 107 NE 261. When the purchase price is paid by one person in discharge of a debt to the party who takes title, no resulting trust arises. Restatement, Law of Trusts, § 446.

 While in the view we have taken of the matter, laches need not be determined, we will state our views thereon. The property was purchased in 1944. During the nine years plaintiff waited before filing suit, he allowed Leslie to act as the owner while he himself had little to do with the property. Matters of policy, procedure and planning were handled by Leslie and it was Leslie and Gotlieb who handled the purchase of the interest originally given the attorney as his fee, as well as a later purchase of Got-

lieb's interest. The master found that plaintiff played no part in the renegotiation of the mortgage in 1947 and again in 1950. In still other respects Leslie acted in a manner adverse to Percy's claim of ownership. During the nine years Leslie acted as owner, the property increased in value from $327,500 to $1,000,-000. Marked appreciation of the value of property is ordinarily fatal to a plaintiff's case where he might have asserted his right before the change and the relief, if granted, would work inequity. 30 CJS § 118, p 541; People ex rel. Jones v. Leviton, 327 Ill App 309, 64 NE2d 195; Carlock v. Carlock, 249 Ill 330, 94 NE 507. Where the property involved is of a speculative or fluctuating character, a claimant must be more than ordinarily prompt and may not await the outcome of an enterprise to assert his interest. 30 CJA § 118, p 541; Pyle v. Ferrell, 12 Ill2d 547, 147 NE2d 341; Benson v. Dempster, 183 Ill 297, 55 NE 651; Cleaver v. Green, 107 Ill 67. The finding by the master that plaintiff's claim was barred by laches is amply supported by the evidence.

██ ██ Plaintiff's final point is that the chancellor erred in taxing as costs against him the amount paid by Leslie as his share of the stenographic expense. The master certified that the stenographic employment was necessary. The statute makes specific provision for stenographic expense. Ill Rev Stats, ch 53, § 38 (1961). The requirements therein set forth must be observed. The expense is taxable only as part of the master's fees, and then only to the extent of 15 cents per hundred words of testimony taken. There was no substantial compliance with that provision of the statute. Ellingsen v. Milk Wagon Drivers Union, 377 Ill 76, 35 NE2d 349; Schultz v. Chicago Flat Janitors Union, 340 Ill App 278, 91 NE2d 471. Defendants are entitled only to such portion of the costs so award-

29

ed which represents the cost of taking depositions and 15 cents per 100 words of testimony taken at the hearings.

Rather than reverse the decree for the sole purpose of reallocating the costs hereinbefore set forth, defendants shall have 30 days within which to file a remittitur of $1535.71, the amount improperly assessed against plaintiff as costs. Upon the filing of such remittitur, the decree will be affirmed; otherwise the decree will be reversed and the cause remanded with directions to enter a decree in accordance with the views herein expressed.

Decree affirmed upon the filing of remittitur; otherwise decree reversed and cause remanded with directions.

McCORMICK, P. J. and DEMPSEY, J., concur.