**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220131-U

Order filed June 27, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| CAROL KONRATH, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Plaintiff-Appellant, | ) | La Salle County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES R. PANKO JR., Independent | ) | Appeal No. 3-22-0131 |
| Executor of the Estate of James R. Panko | ) | Circuit No. 21-CH-30 |
| Sr.; JAMES R. PANKO JR., individually; | ) | |
| MICHAEL J. PANKO, individually; and | ) | |
| EDWARD D. PANKO JR., individually, | ) | The Honorable |
| | ) | Christina M. Cantlin-VanWiggeren, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice Holdridge and Justice Brennan concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   In an appeal in a civil case regarding an alleged oral or implied-in-fact contract for the sale of real property, the appellate court found that the trial court erred in granting defendants' motion to dismiss as to four of the five counts contained in plaintiff's first amended complaint but properly granted the motion to dismiss as to one of the five counts. The appellate court, therefore, affirmed the trial court's judgment in part, reversed the trial court's judgment in part, and remanded the case for further proceedings.

¶ 2    Plaintiff, Carol Konrath, filed a first amended complaint against defendants, James R. Panko Jr. (both individually and as the independent executor of the estate of James R. Panko Sr.), Michael J. Panko, and Edward D. Panko Jr., seeking to enforce an alleged oral or implied-in-fact contract for the sale of certain real property located in Naplate, La Salle County, Illinois. Defendants filed a motion to dismiss all five counts of the first amended complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2020)). Following a hearing, the trial court granted defendants' motion to dismiss. Plaintiff appeals. We affirm the trial court's judgment in part (as to one of the five counts), reverse the trial court's judgment in part (as to four of the five counts), and remand the case for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4    James R. Panko Sr. and Sandra Panko (collectively referred to as the Pankos) were married and had three children: James R. Panko Jr., Michael J. Panko, and Edward D. Panko Sr. Plaintiff was the long-term companion of Edward Sr. In February 2002, the Pankos purchased the subject property, a single family home, in Naplate, La Salle County, Illinois, for approximately $64,000. To pay for the purchase, the Pankos obtained a mortgage loan of approximately $67,000 from Ottawa Savings Bank (OSB or the bank) and set up an escrow account at the bank for the payment of real estate taxes. The Pankos, however, never took up residence in the home. Instead, immediately after the purchase closed, Edward Sr. and plaintiff moved into the home.

¶ 5    From that point forward, Edward Sr. and plaintiff lived in the home and paid all of the home's expenses, including the monthly mortgage payment; the monthly escrow amount for the yearly property taxes; the premiums for homeowners insurance; and the costs for repairs and

2

improvements, which were made without consultation, supervision, or comment from the Pankos. Some of the repairs and improvements that were made to the home over the years were that the furnace and central air systems were replaced and a fence, sump pump, and drainage system were installed. In July 2008, Edward Sr. died, leaving a son, Edward D. Panko Jr. Plaintiff continued to reside in the home after Edward Sr.'s death and continued to pay for all of the home's expenses.

¶ 6        In 2017, the home was damaged by a tornado. Plaintiff's homeowners insurance covered the damage (approximately $105,000), and a check was issued by the insurance company made payable to plaintiff, the Pankos, and OSB. The check was properly endorsed and was placed into an account at OSB to be used to pay for the repairs to the home. Plaintiff exercised sole discretion in determining how the repairs were to be made.

¶ 7        In January 2021, James Sr. died. Sandra had died previously. A probate estate was opened in La Salle County, and James Jr. was appointed independent executor. The heirs and legatees of the estate were James Jr., Michael, and Edward Jr. Shortly before James Sr.'s death, Michael went with plaintiff to First Federal Savings Bank to find out whether plaintiff could obtain a new loan to pay off the remaining balance of the OSB mortgage loan. Plaintiff was informed that such financing could be arranged. At some point after James Sr.'s death, Michael told plaintiff that James Jr. and Edward Jr. would be contacting OSB to get a loan payoff amount. Following James Sr.'s death, plaintiff continued to reside at the subject property and continued to make the monthly mortgage and property tax payments without objection from defendants.

¶ 8        In May 2021, plaintiff filed her original complaint in this case, which was subsequently amended. In addition to the information set forth above, plaintiff claimed in both her original and

her first amended complaint that she was ready, willing, and able to pay off the remaining balance of the Pankos' mortgage loan but that defendants were refusing to honor the agreement and were claiming that plaintiff should vacate the property. Plaintiff's first amended complaint contained five counts: count I for specific performance, count II seeking a constructive trust, count III for a resulting trust, count IV alleging promissory estoppel (labeled in the first amended complaint as detrimental reliance), and count V for money damages.

¶ 9       As to the alleged oral contract, plaintiff's first amended complaint stated:

"That there was and always has been in existence between the Plaintiff, Carol Konrath, and the Pankos a contract to convey the Property to the Plaintiff, the terms of said contract essentially being that Carol Konrath make all payments of principal and interest required by the mortgage to Ottawa Savings Bank in the original amount of approximately $67,000; pay the real estate taxes due on said Property; provide and pay for property insurance on the Property; and keep the Property in a proper state of repair, in return for which the Pankos agreed that upon satisfaction of said terms, to convey the Property to Carol Konrath."

¶ 10      Plaintiff also alleged in the first amended complaint that she was informed and believed that during his lifetime, James Sr. had made statements to the effect that he was helping plaintiff and Edward Sr. buy the house; that if Edward Sr. and plaintiff separated, one would buy the other out; that if either Edward Sr. or plaintiff died, the subject property would go to the survivor; that although the Pankos' names were on the deed and the mortgage papers, the house

4

was really going to Edward Sr. and plaintiff; and that the transaction between the Pankos and plaintiff was like one in which the Pankos were giving plaintiff a mortgage loan.[1]

¶ 11    In addition, at various times in her first amended complaint, plaintiff alleged further that the transaction between her and the Pankos was one in which: (a) plaintiff placed confidence in the Pankos and believed that the Pankos would transfer title to her; (b) title was taken in the name of the Pankos, but plaintiff would directly pay all mortgage payments, real estate taxes, insurance, upkeep, repairs, and improvements and, to the present date, had done so; (c) the above was done with knowledge and for the reason that plaintiff did not have and could not acquire sufficient funds to obtain a mortgage and purchase the property on her own; (d) to the present date, the Pankos had not paid anything for the property; and (e) it was the intention from the beginning that plaintiff and, until his death, Edward Sr., were purchasing the property through the Pankos and that, upon the death of Edward Sr., the house was plaintiff's.

¶ 12    In October 2021, defendants filed a motion to dismiss the first amended complaint pursuant to sections 2-615 and 2-619 of the Code. In the motion, defendants asserted that dismissal of counts II through V of the first amended complaint was proper under section 2-615 of the Code because plaintiff had failed to allege sufficient facts to establish the causes of action set forth in those counts. Defendants alleged further that dismissal of counts I, IV, and V was also proper under section 2-619 of the Code because the causes of action set forth in those counts were barred by the statute of frauds.[2] Plaintiff filed a response and opposed the motion to dismiss.

_____

[1] At some of the points in her first amended complaint where plaintiff made those particular allegations, she incorrectly referred to Edward Sr. as Edward Jr.

[2] Defendants also alleged in the motion to dismiss that all three individual defendants should be dismissed from the case as parties because plaintiff had failed in her first amended complaint to allege sufficient facts to sustain a cause of action against the individual defendants. The trial court, however, did not rule upon that aspect of defendants' motion to dismiss.

5

In her response, plaintiff asserted that dismissal of counts II through V of the first amended complaint was not warranted under section 2-615 of the Code because plaintiff had alleged sufficient facts in those counts to establish the causes of action set forth. Plaintiff asserted further in her response that dismissal of counts I, IV, and V of the first amended complaint was also not warranted under section 2-619 of the Code because plaintiff's partial performance of the oral contract made the statute of frauds inapplicable. Defendants filed a reply and disputed plaintiff's contentions, and plaintiff, with leave of court, filed a rebuttal to defendants' reply.

¶ 13    In December 2021, a hearing was held on defendants' motion to dismiss the first amended complaint. After listening to the oral arguments of the attorneys, the trial court took the case under advisement. In March 2022, the trial court announced its ruling, granting defendants' motion to dismiss. As to count I of the first amended complaint (specific performance), the trial court found that dismissal was proper pursuant to section 2-619 of the Code because "no contract existed between the plaintiff and the defendant" and because "the complaint fail[ed] to allege facts to support an award of specific performance." With regard to count II (constructive trust), the trial court found that dismissal was proper pursuant to section 2-615 of the Code because plaintiff had failed to allege facts to support a constructive trust. Most notably, the trial court indicated that plaintiff had failed to allege fraud or wrongdoing. In addition, the trial court commented, any alleged fiduciary relationship between the parties did not rise "to the heightened standard of a fiduciary relationship in the context of a constructive trust." As for count III (resulting trust), the trial court found that dismissal was proper pursuant to section 2-615 of the Code because plaintiff had failed to plead facts that were legally sufficient to support a resulting trust. In reaching that conclusion, the trial court rejected plaintiff's argument that the Pankos had not actually paid for the property because they had financed the purchase through a mortgage

6

loan. The trial court recognized the fact that plaintiff had paid the monthly mortgage and property tax amounts, had made improvements to the property, and had used the 2017 insurance check to repair the property but believed that the fact that the property was purchased by the Pankos "[was] more substantive in this case." With regard to count IV (promissory estoppel), the trial court found that dismissal was proper pursuant to section 2-619 of the Code because "part performance" was not an exception to the statute of frauds. The trial court also commented that plaintiff was unable to "meet" the elements of count IV. As to count V (money damages), the trial court found that dismissal was proper pursuant to section 2-615 of the Code because plaintiff had failed to plead facts to support a claim for breach of contract.

¶ 14      In addition to the above, as a final comment about its ruling, the trial court stated:

> "Certainly the court recognizes that plaintiff's argument in this scenario does seem fundamentally unfair in reference to the principles, justice, equity, and good conscious [*sic*], and that it would perhaps result in an unjust enrichment to the defendants. However, the court found if it was the intention of the Pankos to assist in the purchase of the property for the plaintiff, that they had other ways that they could have accomplished this and corrected it during James and Sandra's lifetime."

¶ 15      A written order was later entered. In addition to confirming the trial court's oral ruling, the written order established that the trial court was also granting defendants' motion to dismiss count V of plaintiff's first amended complaint pursuant to section 2-619 of the Code based upon the application of the statute of frauds to that count.[3]

---

[3] That portion of the trial court's written order referred to both counts IV and V. We have omitted the reference to count IV here, however, because the trial court had already indicated in its oral ruling that it was dismissing count IV based upon section 2-619 of the Code.

¶ 16 Plaintiff filed a motion to stay the trial court's ruling pending an appeal, which the trial court subsequently granted by agreement of the parties. Plaintiff appealed.

¶ 17                                    II. ANALYSIS

¶ 18 On appeal, plaintiff argues that the trial court erred in granting defendants' motion to dismiss the first amended complaint. Plaintiff asserts that defendants' motion should not have been granted because dismissal was unwarranted under either section 2-615 or section 2-619 of the Code as to any of the five counts of the first amended complaint. Although defendants have not filed an appellee's brief in this case, we will, nevertheless, address the merits of this appeal, pursuant to the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (indicating that in the absence of an appellee's brief, a reviewing court should decide an appeal on the merits if the record is simple and the claimed errors are such that the court may easily decide the issues raised by the appellant without the aid of an appellee's brief).

¶ 19           A. Legal Principles That Apply to Sections 2-615 and 2-619 Dismissals

¶ 20 Section 2-619.1 of the Code allows a party to file a motion that combines a section 2-615 motion to dismiss with a section 2-619 motion to dismiss. See 735 ILCS 5/2-619.1 (West 2020); *Patrick Engineering*, *Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based upon defects that are apparent on the face of the complaint. See 735 ILCS 5/2-615 (West 2020); *Heastie v. Roberts*, 226 Ill. 2d 515, 531 (2007). The crucial inquiry in ruling upon a section 2-615 motion to dismiss is whether the allegations of the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group*, *Inc.*, 186 Ill. 2d 419, 424 (1999). A cause

of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that the plaintiff cannot prove any set of facts that will entitle the plaintiff to relief. *Heastie*, 226 Ill. 2d at 531.

¶ 21 A section 2-619 motion to dismiss, on the other hand, allows a litigant to obtain an involuntary dismissal of an action or claim based upon certain defects or defenses. See 735 ILCS 5/2-619 (West 2020); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). The purpose of the statute is to provide litigants with a method for disposing of issues of law and easily proven issues of fact early in a case, often before discovery has been conducted. See *Van Meter*, 207 Ill. 2d at 367; *Advocate Health & Hospitals Corp. v. Bank One*, *N.A.*, 348 Ill. App. 3d 755, 759 (2004). In a section 2-619 proceeding, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the nonmoving party's claim. *Van Meter*, 207 Ill. 2d at 367. Section 2-619 lists several grounds for which an involuntary dismissal may be granted. See 735 ILCS 5/2-619(a)(1) to (a)(9) (West 2020). Under subsection (a)(7), the subsection that applies in this case, a litigant may obtain an involuntary dismissal of a claim asserted against him if the claim is barred by the application of the statute of frauds. 735 ILCS 5/2-619(a)(7) (West 2020).

¶ 22 When ruling on either a section 2-615 or a section 2-619 motion to dismiss, the trial court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from those facts, but a court cannot accept as true mere conclusions that are unsupported by specific facts. *Patrick Engineering*, *Inc.*, 2012 IL 113148, ¶ 31. A dismissal under either section 2-615 or 2-619 is reviewed *de novo*. *Id.* When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of a section 2-615 or a section 2-

9

619 motion to dismiss may be affirmed by the appellate court on any basis supported by the record. *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 220 (2007) (stating that rule as to section 2-615 motions to dismiss); *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 14 (stating that rule as to section 2-619 motions to dismiss).

¶ 23                  B. Count I of Plaintiff's First Amended Complaint for Specific Performance

¶ 24         As her first point of contention on appeal, plaintiff argues that the trial court erred in granting defendants' motion to dismiss count I of plaintiff's first amended complaint for specific performance. In support of that argument, plaintiff makes three main assertions. First, plaintiff asserts that the trial court's ruling was, in essence, a *sua sponte* dismissal under section 2-615 of the Code, which, according to plaintiff, was improper because plaintiff was not given prior notice that count I of the first amended complaint was possibly deficient (defendant sought dismissal of count I based solely upon section 2-619 of the Code and the application of the statute of frauds) or the opportunity to amend count I further to correct any deficiencies. Second, and in the alternative, plaintiff asserts that even if the trial court could properly dismiss count I pursuant to section 2-615 of the Code, such a dismissal was unwarranted in the instant case because plaintiff alleged sufficient facts to establish her claim for specific performance. Third, and also in the alternative, plaintiff asserts that if this court finds that the trial court's dismissal was based upon section 2-619 of the Code, rather than section 2-615, that dismissal was also improper because plaintiff's possession and improvement of the property was sufficient part performance to prevent the application of the statute of frauds in this case. Therefore, for all of the reasons set forth, plaintiff asks that we reverse the trial court's ruling on count I (specific performance) and that we remand this case for further proceedings.

¶ 25    After reviewing the record in the present case, we agree with plaintiff's first assertion on this issue. Although the trial court's written order stated that the dismissal of count I of the first amended complaint was based upon section 2-619 of the Code, the reasons for the trial court's ruling, which were stated on the record, were clearly based upon section 2-615 of the Code—that no contract existed between plaintiff and defendants (presumably, the Pankos) and that the complaint failed to allege facts to support an award of specific performance. As plaintiff correctly notes, she was not given prior notice of a possible deficiency in count I, since defendants' motion to dismiss as to that count was based solely upon section 2-619 of the Code, and was not given an opportunity to further amend count I to correct any deficiencies. We, thus, conclude that the trial court's *sua sponte* dismissal of count I was erroneous. See *Oak Grove Jubilee Center*, *Inc. v. City of Genoa*, 347 Ill. App. 3d 973, 978-79 (2004) (indicating that the trial court's *sua sponte* dismissal of a plaintiff's declaratory judgment action was reversible error and noting that the plaintiff was not given notice nor an opportunity to be heard on the issue upon which the trial court based its dismissal).

¶ 26    In reaching that conclusion, we note that while a section 2-619 motion to dismiss count I of the first amended complaint was properly before the trial court in this case, a dismissal of count I pursuant to that section would have been unwarranted as well. It is well established under Illinois law that sufficient part performance of an oral contract will remove the contract from the operation of the statute of frauds. See, *e.g.*, *Heitz v. Circle Four Realty Co.*, 191 Ill. App. 3d 727, 731-32 (1989) (finding that the statute of frauds did not bar the enforcement of an orally modified contract for the sale of land because the purchaser had taken possession of the land and had partially performed the contract by tendering annual payments relating to the land and making valuable improvements to the land). In this case, plaintiff immediately took possession

11

of, and resided in, the home; paid all of the expenses of the home; made repairs and significant improvements to the home, including extensive repairs after the home was damaged in a tornado. Plaintiff treated herself as the owner of the home; was viewed by others as the owner of the home; had done all of the above for the past 20 years; and was willing and able to pay off the balance of the mortgage loan on the home. Therefore, plaintiff's actions, taken as true at this stage of the proceedings, constituted sufficient part performance to remove plaintiff's oral contract with the Pankos from the operation of the statute of frauds. See *id.*; *Pendleton v. King*, 55 Ill. App. 3d 1, 4 (1977) (finding that the plaintiffs had demonstrated sufficient part performance as necessary to remove the bar of the statute of frauds, where the plaintiffs had taken possession of the property, made a down payment and five monthly payments for the property, and completed several improvements on the property). For the reasons stated, we reverse the trial court's dismissal of count I (specific performance) of the first amended complaint and remand this case for further proceedings on that count. In so doing, we make no ruling upon plaintiff's remaining assertion in the alternative, since plaintiff's count I may again be amended upon remand.

¶ 27        C. Count II of Plaintiff's First Amended Complaint for a Constructive Trust

¶ 28        As her second point of contention on appeal, plaintiff argues that the trial court erred in granting defendants' section 2-615 motion to dismiss count II of plaintiff's first amended complaint, which sought the imposition of a constructive trust on the property in question. Plaintiff asserts that defendants' motion to dismiss should not have been granted because plaintiff alleged sufficient facts in her first amended complaint to establish a claim for a constructive trust. The trial court reached the opposite conclusion based upon its finding that plaintiff had failed to allege sufficient facts to establish the existence of a fiduciary relationship

12

between plaintiff and the Pankos as was necessary for a constructive trust to exist in this case. Plaintiff maintains that the trial court's finding in that regard was incorrect because the facts alleged in the first amended complaint gave rise to a reasonable inference that plaintiff's interest in the property was contemplated before the Pankos purchased the property, that the Pankos considered plaintiff to be the owner of the property, and that the Pankos were acting as plaintiff's agent when they purchased the property. Thus, plaintiff contends that the facts alleged in the first amended complaint were sufficient to establish the existence of a fiduciary relationship between plaintiff and the Pankos and that the trial court erred in granting defendants' motion to dismiss plaintiff's constructive trust claim. Plaintiff asks, therefore, that we reverse the trial court's ruling on count II (constructive trust) and that we remand this case for further proceedings.

¶ 29        A constructive trust is an equitable remedy that a trial court may impose to rectify unjust enrichment caused by a party's wrongful conduct. *Indeck Energy Services*, *Inc. v. DePodesta*, 2021 IL 125733, ¶ 60; *Charles Hester Enterprises*, *Inc. v. Illinois Founders Insurance Co.*, 114 Ill. 2d 278, 293 (1986).To prevail on a claim for a constructive trust, the plaintiff must plead and prove the following two elements: (1) that a specific identifiable property exists to serve as a *res* upon which the constructive trust may be imposed; (2) that the *res* or its product is in the possession of a person who is to be charged as the constructive trustee. See *People ex rel. Hartigan v. Candy Club*, 149 Ill. App. 3d 498, 502 (1986). In addition, for a constructive trust to be imposed, the complaint must make specific allegations of wrongdoing, such as fraud, breach of fiduciary duty, duress, coercion or mistake. *Suttles v. Vogel*, 126 Ill. 2d 186, 194 (1988). The grounds for imposing a constructive trust must be so clear, convincing, strong, and unequivocal that they lead to only one conclusion. *Id.*

13

¶ 30	Under the doctrine of constructive trust, if a party has wrongfully acquired property and it would be unjust for that party to retain the property, the trial court may declare the wrongful party to be the constructive trustee of the property and may require the wrongful party to transfer title and possession of the property to the rightful party. See *Charles Hester Enterprises*, *Inc.*, 114 Ill. 2d at 293. A constructive trust normally arises in one of two circumstances: (1) where actual or constructive fraud is considered as equitable grounds for imposing the trust; and (2) where there exists a fiduciary relationship and subsequent abuse of that relationship. *Id.* Constructive trusts have also been imposed, however, on the grounds of duress, coercion, and mistake. *Id.* In any case, some form of wrongful or unconscionable conduct is generally required for the imposition of a constructive trust. *Id.*

¶ 31	In the instant case, there are no allegations of fraud, duress, coercion, or mistake. Instead, plaintiff's claim of a constructive trust is based upon the existence of a fiduciary relationship between plaintiff and the Pankos. The term, fiduciary relationship (also referred to as a confidential relationship), is given a very broad definition in the context of a constructive trust, and may be created either as a matter of law, such as with a principal and agent, or as a matter of fact, in any situation where one person reposes trust and confidence in another, which results in the other person gaining influence and superiority (that is subsequently abused) over that individual. See *Anderson v. Lybeck*, 15 Ill. 2d 227, 232 (1958); *Jackson v. Callan Publishing*, *Inc.*, 2021 IL App (1st) 191458, ¶ 204. In most instances, a mere oral agreement does not give rise to a fiduciary relationship between the parties. *Ray v. Winter*, 67 Ill. 2d 296, 304 (1977). However, where one person voluntarily acts as an agent for another, a fiduciary relationship (principal and agent) exists as a matter of law. *Id.*

14

¶ 32    In the present case, after reviewing the motion pleadings and the allegations contained in the first amended complaint, we find that plaintiff alleged sufficient facts to establish her claim for a constructive trust on the subject property. The only element of a constructive trust claim that is in dispute in this case is the second element—whether defendants held the property for plaintiff as constructive trustees. See *Hartigan*, 149 Ill. App. 3d at 502. As to that element, the allegations contained in the first amended complaint and the reasonable inferences therefrom, taken in the light most favorable to plaintiff, established that the Pankos had voluntarily purchased a home (the subject property) for Edward Sr. (their son) and plaintiff (their son's longtime companion) because plaintiff and Edward Sr. were unable to purchase a home on their own. By doing so, the Pankos voluntarily acted as plaintiff's (and Edward Sr.'s) agent in obtaining both legal title to the home and the financing for the purchase. Thus, contrary to the trial court's ruling, count II alleged sufficient facts to establish that a fiduciary relationship— principal and agent—existed between plaintiff and the Pankos as a matter of law for the purpose of a constructive trust. See *Ray*, 67 Ill. 2d at 305 (finding the existence of principal-agent relationship, where one party undertook to purchase land for another party).

¶ 33    The trial court in the instant case reached the opposite conclusion by relying, in part, upon the appellate court's decision in *Ray* (see *Ray v. Winter*, 39 Ill. App. 3d 567, 577-79 (1976)), which, to some extent, supported the trial court's ruling on whether a fiduciary relationship existed in the present case. Apparently, neither the trial court nor the parties were aware, however, that the Illinois Supreme Court reversed the appellate court's decision in *Ray* in a manner that supported plaintiff's position in this case as indicated above. In addition to finding the existence of a fiduciary relationship, the supreme court in *Ray* further stated that if an agent voluntarily undertakes to purchase real property for its principal and then later refuses to convey

15

that property to the principal, equity will impose a constructive trust on the property and will require the agent to convey that property to the principal. See *Ray*, 67 Ill. 2d at 304-06. Applying that rule here, if plaintiff's allegations and the reasonable inferences therefrom are taken as true and in the light most favorable to plaintiff, a constructive trust would be imposed on the property under the principles of equity because the Pankos, as the agent of plaintiff (the principal), had voluntarily undertaken to purchase property for plaintiff but subsequently, through defendants as the Pankos' successors, refused to convey that property to plaintiff. See *id.* Therefore, consistent with the legal principles set forth in the supreme court's decision in *Ray*, we find that plaintiff's constructive trust claim (count II of the first amended complaint) was legally sufficient and that the trial court erred in granting defendants' section 2-615 motion to dismiss that claim. Accordingly, we reverse the trial court's ruling on count II and remand this case for further proceedings on that count.

¶ 34          D. Count III of Plaintiff's First Amended Complaint for a Resulting Trust

¶ 35          As her third point of contention on appeal, plaintiff argues that the trial court erred in granting defendants' section 2-615 motion to dismiss count III of plaintiff's first amended complaint, which sought the imposition of a resulting trust on the property in question. Plaintiff asserts that defendants' motion should not have been granted because plaintiff alleged sufficient facts in her first amended complaint to establish a claim for a resulting trust. The trial court reached the opposite conclusion primarily because the facts alleged showed that the Pankos had purchased the property in their own names with a mortgage loan that was also in their own names. Although plaintiff does not dispute that the Pankos did so, she maintains on appeal that such facts do not prevent a resulting trust from arising and that the trial court's conclusion to the contrary was incorrect. Thus, plaintiff contends that the facts alleged in her first amended

complaint were sufficient to establish a claim for a resulting trust and that the trial court erred in granting defendants' motion to dismiss plaintiff's resulting trust claim. Plaintiff asks, therefore, that we reverse the trial court's ruling on count III (resulting trust) and that we remand this case for further proceedings.

¶ 36        A resulting trust, which is described as an intent-enforcing trust, arises by operation of law, like a constructive trust, but its existence depends upon the intent of the parties. *In re Estate of Wilson*, 81 Ill. 2d 349, 355 (1980); *Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc.*, 272 Ill. App. 3d 370, 381 (1995); *In re Estate of Koch*, 297 Ill. App. 3d 786, 788 (1998). A resulting trust generally arises when one person buys real property with his or her own money, but legal title to the property is taken in the name of another. *Estate of Wilson*, 81 Ill. 2d at 355; *Wright v. Wright*, 2 Ill. 2d 246, 250 (1954). The purchase price for the property may be paid to the grantor directly or indirectly and may be paid by or for the resulting trust claimant. *Wright*, 2 Ill. 2d at 250-51. Indeed, it has been recognized that the payment of money by one person for the purchase of property may constitute a loan to another person for that same purchase such that a resulting trust will be raised in the property for the benefit of the person who received the loan. See *id.* at 253-54. A resulting trust is based on the natural equity principle that the person who paid for the property (the payor) should be the sole person who gets to enjoy the property, unless the payor intended by the vesting of legal title in another person to confer a beneficial interest in the property upon that person. See *Estate of Wilson*, 81 Ill. 2d at 356; *Cadena v. Cadena*, 116 Ill. App. 3d 153, 155 (1983). A resulting trust arises at the time of the conveyance (or not at all), and the payor's intention at that time determines whether a resulting trust may be found. *Estate of Wilson*, 81 Ill. 2d at 355-57. The party claiming a resulting trust bears the burden of proving the trust's existence by clear and convincing evidence (the evidence must be clear, convincing, and

17

unmistakable). *Id.* at 356. The payment of consideration by the claimant raises a *prima facie* presumption of a resulting trust which may be rebutted by proof of an intention that the current legal title holder was to take a beneficial interest in the property and not merely legal title. *Id.* The intention of the purchaser must be determined from the unique facts and circumstances of each individual case. *Id.* A resulting trust will not be sustained if the transaction can be construed in any other reasonable fashion. *Cadena*, 116 Ill. App. 3d at 155.

¶ 37        In the present case, after reviewing the record, we find that plaintiff alleged sufficient facts in her first amended complaint to establish a claim for a resulting trust. The allegations contained in the first amended complaint and the reasonable inferences therefrom, taken in the light most favorable to plaintiff, established that the Pankos had voluntarily undertaken to purchase a home (the subject property) for Edward Sr. and plaintiff because plaintiff and Edward Sr. were unable to purchase a home on their own; that the Pankos took legal title to the home and obtained the financing for the purchase, but plaintiff (and Edward Sr., while he was alive) took immediate possession of the home and paid all of the home's expenses (both immediately and for 20 years thereafter), including the monthly mortgage payment, the annual property taxes, the homeowners insurance premium, and the costs of repairs and improvements; and that despite plaintiff being willing and able to pay off the remaining balance owed on the mortgage loan, defendants refused to transfer the property to the plaintiff. By our view, the allegations contained in the first amended complaint were sufficient to establish that the intent of the Pankos, plaintiff, and Edward Sr. at the time of the initial purchase of the home was that the home would belong to plaintiff and Edward Sr., that the Pankos would merely hold legal title to the home, and that the Pankos would transfer legal title to plaintiff and Edward Sr. when the mortgage loan was completely paid off. We find, therefore, that plaintiff's resulting trust claim (count III of the first

18

amended complaint) was legally sufficient and that the trial court erred in granting defendants' section 2-615 motion to dismiss that claim. Contrary to the trial court's ruling, the fact that the Pankos obtained a mortgage loan in their own names to finance the initial purchase of the property does not negate plaintiff's claim for a constructive trust or make plaintiff's claim legally insufficient. See, *e.g.*, *Wright*, 2 Ill. 2d at 251-57 (finding that a resulting trust arose in favor of a mother on a rooming house that was purchased with legal title in her son's name and with a loan obtained in her son's name because the mother could not obtain financing for the purchase, where it was clear and convincing from the evidence presented that the parties' intent at the time of the transaction was that the mother would be the true owner of the property and would pay all of the expenses of the property and that the son would be the purchaser in name only so that mother could make use of the son's credit to purchase the property). Accordingly, we reverse the trial court's ruling on count III (resulting trust) and remand this case for further proceedings on that count.

¶ 38          E. Count IV of Plaintiff's First Amended Complaint for Promissory Estoppel

¶ 39          As her fourth point of contention on appeal, plaintiff argues that the trial court erred in granting defendants' sections 2-615 and 2-619 motion to dismiss count IV of plaintiff's first amended complaint for promissory estoppel. Plaintiff asserts that defendants' motion to dismiss should not have been granted because plaintiff alleged sufficient facts in her first amended complaint to establish her claim of promissory estoppel and because plaintiff's promissory estoppel claim was not barred by the statute of frauds since plaintiff's possession and improvement of the property was sufficient part performance in this case to refute the application of the statute of frauds. Plaintiff asks that we reverse the trial court's grant of defendants' motion to dismiss count IV (promissory estoppel) and that we remand this case for further proceedings.

19

¶ 40    Promissory estoppel is a common law doctrine by which a person who relies on a promise to his detriment may seek to enforce that promise, despite the absence of a contract between the parties. See *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 91; *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51 (2009); Restatement (Second) of Contracts § 90(1) (1981). To establish a claim of promissory estoppel, the plaintiff must plead and prove the following four elements: (1) that defendant made an unambiguous promise to plaintiff; (2) that plaintiff relied upon that promise; (3) that plaintiff's reliance was expected and foreseeable by defendant; and (4) that plaintiff relied on the promise to his detriment. *Matthews*, 2016 IL 117638, ¶ 95; *Newton Tractor Sales, Inc.*, 233 Ill. 2d at 51; Restatement (Second) of Contracts § 90(1) (1981). A claim of promissory estoppel is not exempt from the application of the statute of frauds. *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 492 (1997).

¶ 41    In the present case, after reviewing count IV of plaintiff's first amended complaint for promissory estoppel and the motion pleadings, we find that the trial court properly granted defendants' motion to dismiss count IV. While it does appear that plaintiff alleged sufficient facts in her first amended complaint to establish a claim for promissory estoppel (see *Matthews*, 2016 IL 117638, ¶ 95; *Newton Tractor Sales, Inc.*, 233 Ill. 2d at 51; Restatement (Second) of Contracts § 90(1) (1981)) and to survive defendants' section 2-615 motion to dismiss, dismissal was still warranted in this case pursuant to defendants' section 2-619 motion because promissory estoppel is not an exception to the statute of frauds. See *McInerney*, 176 Ill. 2d at 492. Although plaintiff tries to assert on appeal that her partial performance saves her promissory estoppel claim from the application of the statute of frauds, we have found no legal authority—and plaintiff has cited none—that would allow partial performance to be used in that manner. To the contrary, the cases cited by plaintiff in support of her position merely state the general principle—that partial

performance may be asserted, under appropriate circumstances, to prevent the statute of frauds from barring the enforcement of an oral contract (that partial performance is an exception to the statute of frauds)—and do not involve situations where partial performance was used to save a claim of promissory estoppel from the application of the statute of frauds. See, *e.g.*, *Heitz*, 191 Ill. App. 3d at 731-32 (finding that the statute of frauds did not bar the enforcement of an orally modified contract for the sale of land because the purchaser had taken possession of the land and had partially performed the contract by tendering annual payments relating to the land and making valuable improvements to the land). We, therefore, conclude that the trial court properly granted defendants' motion to dismiss count IV of plaintiff's first amended complaint for promissory estoppel based upon section 2-619 of the Code. Accordingly, we affirm the trial court's ruling on count IV.[4]

¶ 42          F. Count V of Plaintiff's First Amended Complaint for Money Damages

¶ 43          As her fifth and final point of contention on appeal, plaintiff argues that the trial court erred in granting defendants' sections 2-615 and 2-619 motion to dismiss count V of plaintiff's first amended complaint for money damages. Plaintiff asserts that defendants' motion to dismiss should not have been granted because a claim for money damages may be maintained when a claim for specific performance has been alleged, because plaintiff alleged sufficient facts in her first amended complaint to establish her claim for money damages, and because plaintiff's money damages claim was not barred by the statute of frauds since plaintiff had partially

_____

[4] Although the trial court stated in its ruling on count IV that partial performance was not an exception to the statute of frauds, we believe that the trial court merely misspoke and meant to state that promissory estoppel was not an exception to the statute of frauds, consistent with the statement made by defendants in their motion pleadings. As indicated above, it is well established in the law that partial performance may be asserted as an exception to the statute of frauds to prevent the statute of frauds from barring the enforcement of an oral agreement. See, *e.g.*, *id.*; *Leekha v. Wentcher*, 224 Ill. App. 3d 342, 349 (1991).

21

performed the oral or implied contract at issue. Plaintiff asks, therefore, that we reverse the trial court's grant of defendants' motion to dismiss count V (money damages) and that we remand this case for further proceedings.

¶ 44   To sustain a cause of action for breach of contract, whether written or oral, a plaintiff must plead and prove the following four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages or injury to the plaintiff caused by the breach. See *Ivey v. Transunion Rental Screening Solutions*, *Inc.*, 2022 IL 127903, ¶ 28; *Lindy Lu LLC v. Illinois Central R.R. Co.*, 2013 IL App (3d) 120337, ¶ 21; *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 68. For a valid contract to exist, there must be an offer and acceptance, consideration, and contractual terms that are valid and certain. *Lindy Lu LLC*, 2013 IL App (3d) 120337, ¶ 21. When a breach of a contract has been proven, some of the remedies that are available to the trial court include contract damages, specific performance, and awarding restitution to prevent unjust enrichment. See Restatement (Second) of Contracts §§ 344-45 (1981); *MC Baldwin Financial Co. v. DiMaggio*, *Rosario & Veraja*, *LLC*, 364 Ill. App. 3d 6, 14 (2006).

¶ 45   In the instant case, after considering the first amended complaint and the motion pleadings, we find that the trial court erred in granting defendants' motion to dismiss count V of the first amended complaint for money damages. First, as to defendants' section 2-615 motion to dismiss, plaintiff alleged in count V of the first amended complaint that an oral or implied contract existed between her and the Pankos in which the Pankos agreed to help plaintiff (and Edward Sr.) acquire a home by obtaining legal title to the home and a mortgage loan to finance the purchase in the Pankos' names; that plaintiff agreed to pay all of the expenses of the home, including the monthly mortgage payment, the property taxes, and the homeowners insurance

22

premium; and that, in return, the Pankos agreed that they would transfer legal title to the property to plaintiff when the mortgage loan was completely paid off. Plaintiff also alleged in the first amended complaint that she had performed all of her obligations under the oral agreement and was willing and able to pay off the remaining balance of the mortgage loan, but that defendants were refusing to honor the agreement. Thus, contrary to the trial court's ruling, the factual allegations contained in the first amended complaint and the reasonable inferences therefrom, when taken as true and viewed in the light most favorable to plaintiff, were sufficient to establish all of the necessary elements of a breach of contract claim. See *Ivey*, 2022 IL 127903, ¶ 28; *Lindy Lu LLC*, 2013 IL App (3d) 120337, ¶ 21; *Sheth*, 2013 IL App (1st) 110156, ¶ 68. Indeed, defendants did not challenge the sufficiency of those same allegations of an oral or implied contract as to plaintiff's claim for specific performance in count I of the first amended complaint. That some aspect of the Pankos' promised performance may have been gratuitous in nature does not prevent valuable consideration from existing in this case. See Restatement (Second) of Contracts § 71, Comment c (1981) (recognizing that even where both parties know that a transaction is in part a bargain and in part a gift, the bargain element may still furnish consideration for the entire transaction); 3 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 7:50 (4th ed. May 2023 Update) (same). The trial court, therefore, erred in granting defendants' motion to dismiss count V based upon section 2-615 of the Code.

¶ 46        Second, with regard to defendants' section 2-619 motion to dismiss, we believe that the doctrine of part performance would apply in this case to remove plaintiff's oral or implied agreement with the Pankos from the operation of the statute of frauds. The cases to the contrary cited by defendants in their motion pleadings in the trial court involved instances in which the only claim filed by the plaintiff was a claim at law for money damages. See, *e.g.*, *Cain v. Cross*,

23

293 Ill. App. 3d 255, 259 (1997). That rule does not apply in a situation, such as the present case, where plaintiff has sought specific performance and other equitable remedies. See *Alter v. Moellenkamp*, 23 Ill. 2d 506, 510-11 (1961) (stating, in a case in which the plaintiff had sought specific performance and damages in the alternative, that the trial court, after determining that specific performance was not available, should have held a trial on the plaintiff's alternative prayer for damages and recognizing the general principal that when a court of equity has taken jurisdiction over a case for one purpose, it acquires jurisdiction over that case for all purposes and will do full and complete justice between the parties); *Mandel v. Hernandez*, 404 Ill. App. 3d 701, 706 (2010) (stating the general rule—that when a decree of specific performance does not provide complete relief, the injured party is entitled to those damages that will make him or her whole, including monetary damages incidental to and caused by a delay in performance— although ultimately determining that the trial court did not err in refusing to award such damages in that case). We also conclude, therefore, that the trial court erred in granting defendants' motion to dismiss based upon section 2-619 of the Code as well.

¶ 47          Having determined that the trial court erred in granting defendants' motion to dismiss count V of plaintiff's first amended complaint under both sections 2-615 and 2-619 of the Code, we reverse the trial court's ruling on count V (money damages) and remand this case for further proceedings on that count.  In reaching that conclusion, we note that count V of plaintiff's first amended complaint should probably have been more accurately described in the heading for that count as a claim for breach of contract in which plaintiff was seeking money damages, although it does appear from the record that the trial court treated count V as such in making its decision.

24

¶ 48                                    III. CONCLUSION

¶ 49          For the foregoing reasons, we affirm the trial court's ruling granting defendants' motion to dismiss count IV of plaintiff's first amended complaint, we reverse the trial court's ruling granting defendants' motion to dismiss counts I, II, III, and V of the first amended complaint, and we remand this case for further proceedings on counts I, II, III, and V.

¶ 50          Affirmed in part and reversed in part.
              Cause remanded.